## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MICHAEL WEINIK, D.O. | : |
|  | : |
|  | : |
| *Plaintiff* | : |
| v. | : No.  2:19-cv-3503-MSG |
|  | : |
| TEMPLE UNIVERSITY OF THE | : |
| COMMONWEALTH SYSTEM OF | : *Jury Trial Demanded* |
| HIGHER EDUCATION, TEMPLE | : |
| UNIVERSITY LEWIS KATZ | : |
| SCHOOL OF MEDICINE, TEMPLE | : |
| UNIVERSITY HOSPITAL, SHIVANI | : |
| DUA, and PHILLIP ACEVEDO | : |
|  | : |
| *Defendants* | : |

### AMEMNDED COMPLAINT

Plaintiff Michael Weinik, D.O. ("Plaintiff" or "Dr. Weinik"), by and through

his attorneys Rogers Castor, hereby submits the following Complaint against

Defendant Temple University of the Commonwealth System of Higher Education

("Temple University") and Temple University's Lewis Katz School of Medicine

(the "Medical School"), Temple University Hospital (the "Hospital")(collectively,

"Defendants" or "Temple.")  In support thereof, he pleads as follows:

### THE PARTIES

1.      Plaintiff is an individual who lives at 34 Saint James Court,

Philadelphia, PA 19106.

2.      Temple University is a state university, affiliated with the Commonwealth of Pennsylvania, whose principle place of business is located at 300 Sullivan Hall, 1330 W. Polett Walk, Philadelphia, PA 19122.

3.      Similarly, the Medical School is part of Temple University and is located at Medicine Education and Research Building (MERB), 3500 N. Broad Street, Philadelphia, PA 19140.

4.      In addition, the Hospital is also part of Temple University and is located at 3401 N. Broad Street, Philadelphia, PA 19140.

5.      Accordingly, the Defendants are state-related institutions whose actions are taken under color of state law and are subject to scrutiny under 42 U.S.C. § 1983.

6.      Shivani Dua is a former resident at Temple with a current business address of Main Line Spine, 700 South Henderson Rd., King of Prussia, PA 19406.

7.      Phillip Avevedo is a former Temple Resident with a current business address of Northeastern Rehabilitation Associates, 3400 Bath Pike Plaza, Suite 400, Bethlehem, PA 18017

## JURISDICTION AND VENUE

8.      This Court possesses jurisdiction over the claims set forth herein, as well as the parties to this action, pursuant to 42 Pa. C.S. §§ 5301 & 5308.

2

9.      Venue is proper in this Court, pursuant to Pa.R.C.P. 1006, because all of the parties reside in Philadelphia County and this is the place where the causes of action arose.

## FACTUAL BACKGROUND

10.     Dr. Weinik has served the entirety of his long and distinguished medical career at Temple.

11.     Dr. Weinik began practicing medicine at Temple as a first-year Physical Medicine & Rehabilitation resident over 30 years ago in 1986.

12.     In October of 1989, Dr. Weinik began working as an attending physician at Temple.

13.     From 1991 to 2001 Dr. Weinik served as an Assistant Professor in Temple's Physical Medicine & Rehabilitation Department.

14.     In 2001, Dr. Weinik was promoted to the position of Associate Professor in Temple's Physical Medicine & Rehabilitation Department.

15.     In 2013, Dr. Weinik became a full clinical Professor of Physical Medicine & Rehabilitation at Temple.

16.     He continued to serve in that position until Temple fired him in 2018.

17.     Dr. Weinik served at Shriners Hospital in Philadelphia for 17 years treating children with various disabilities.

18.     Dr. Weinik volunteered to, and treated, children with disabilities in Puerto Rico on more than 10 occasions.

3

19.    Dr. Weinik was Team Physician for the Philadelphia Flyers for 10 years, the Philadelphia Eagles for five years, and consulted with the Philadelphia Phillies in 2008.

20.    Dr. Weinik was Team Physician for the United States Rowing team for four years and accompanied the team to the World Championships in 1991 and 1993.

21.    Dr. Weinik provided care for the FIFA Soccer World Championships when the championship venue was Philadelphia.

22.    Dr. Weinik believes and therefore avers that no other physiatrist, now or ever, in the Philadelphia area, possesses the depth and diversity of sports medicine experience that he does.

23.    Dr. Weinik is an experienced medical lecturer at the local, state national, and international levels.

24.    Dr. Weinik has trained over 300 residents and an additional approximately 500 medical students from the United States and abroad.

25.    Dr. Weinik is a Board member and Past President of the American Osteopathic College of Physical Medicine and Rehabilitation.

26.    Dr. Weinik's ongoing employment with Temple was renewed on an annual basis by a letter agreement, reappointing him as Professor of Clinical Physical Medicine and Rehabilitation.

27.    On November 18, 2017, Temple University honored Plaintiff at

4

Lincoln Financial Field before thousands of people where the Provost of the

College of Medicine recognized Dr. Weinik for his commitment to the education

of medical students and residents as a professor, and his exemplary work in

providing patients with exceptional clinical care.

28.    The latest iteration of the contract agreement is dated March 14, 2018

("Contract").  *A true and correct copy of the Contract is attached hereto as Exhibit*

*"A."*

29.    The Dean of the School of Medicine appointed Dr. Weinik as Interim

Chair of the Department of Physical Medicine and Rehabilitation in 2015, telling

Dr. Weinik that the current chair he was to replace was allowing the program to

falter with standards of education and care diminishing from what the School of

Medicine expected.

30.    Dr. Weinik was actively engaged in the process of removing the

doctor he replaced as Department Chair from that doctor's additional position as

the residency program director beginning in November of 2017 and continuing into

January of 2018.

31.    The action Dr. Weinik intended on taking against the director of the

residency program, removing him from that directorship, would have dealt a severe

blow to that doctor's career.

32.    Plaintiff believes and therefore avers that this doctor, Dr. Ian Matin,

Director of the Residency Program, and the man Plaintiff replaced as Chair of the

Department, out of spite and other malicious motives set in motion a series of events weaponizing residents he befriended, or had power over in his position as Director, to falsely accuse Dr. Weinik of sexual harassment knowing that only by destroying Dr. Weinik could Dr. Matin retain his position as Director.

33.    Plaintiff believes and therefore avers that residents inspired by Dr. Matin began making false allegations against Plaintiff in the middle of January 2018, in order to pre-empt Plaintiff from removing Dr. Matin from his position as Director.

34.    The attack worked, since Plaintiff was forced to defend himself against the lies instead of proceeding with the improvement of medical education at Temple by removing Dr. Matin.

35.    Plaintiff believes and therefore avers that Temple officials (not professionals hired at the direction of Temple, but Temple officials themselves untrained in such matters) conducted an inept, unprofessional, and incomplete "investigation" into false allegations made against Dr. Weinik in the nature of sexual harassment.

36.    On March 11, 2018, a past resident at Temple, and a current practicing physician, told Plaintiff that Dr. Ian Matin was attempting to ruin Plaintiff's career by enticing residents make bogus complaints of sexual harassment and other misconduct about Dr. Weinik to Temple officials.

37.    Despite Dr. Weinik's diligent efforts to investigate on his own the

details of the false allegations and his attempts to learn the identities of the specific individuals spreading the lies, Dr. Weinik's efforts proved unsuccessful.

38.    On March 13, 2018, supervisors at Temple removed Plaintiff as interim Chair of the Department, leaving Plaintiff to believe this was to be his "punishment" on the unfounded allegations.

39.    The following day, on March 14, 2018, Plaintiff and Temple executed a 15-month employment contract to employ Plaintiff until July 2019, but removing additional compensation previously paid to him as interim Chair. *See Exhibit "A"*.

40.    Temple breached the contract of March 14, 2018, when it stopped paying Plaintiff on October 29, 2018.

41.    On March 15, 2018, Temple orally advised Plaintiff he was on Administrative leave effective immediately and that he had one hour to clean out his office.  Plaintiff was not given written notice of his alleged transgressions, nor notice of any right to counsel.

42.    On March 16, 2018, Temple confirmed in writing that the executed contract of March 14, 2018 was received, and Temple began paying Plaintiff under that contract until October 29, 2018.

43.    On July 10, 2018, a hearing was conducted pursuant to the Temple University Hospital Bylaws 8.3 and 8.4 before a hearing committee appointed following a unanimous adverse recommendation by MSEC under Bylaw 8.2 recommending expulsion of Plaintiff.

44.     Temple did not reveal the identities of many of his accusers or any of the details of their allegations against him until just days before the hearing.

45.     Indeed, the full scope of the lies asserted against Dr. Weinik was not revealed until July 10, 2018.

46.     Defendants Shivani Dua and Phillip Acevedo falsely and maliciously told their employer, Defendant Temple, Plaintiff engaged in sexual harassment knowing that was false or in reckless disregard for the truth or falsity of said statement. *Plaintiff hereby incorporates herein by reference the Notes of Testimony and exhibits from the proceeding dated July 10, 2018 as Exhibit "B."*

47.     The hearing committee, comprised of three Medical Staff Members, was chosen by Chair of MSEC, Vincent Cowell, M.D., and was, as stated, based on the unanimous recommendation from MSEC that Plaintiff be dismissed from the hospital.

48.     In addition to choosing the hearing committee panelists, the Chair of MSEC, Dr. Cowell, acted as the "prosecutor" at the hearing on July 10, 2018 calling witnesses, giving testimony, and making arguments in an effort to demonstrate to the hearing committee that it ought to agree with the unanimous recommendation of MSEC and that of its leader and the prosecutor of the hearing, Dr. Cowell.[1]

_____

[1] In addition to chairing the MSEC, the very body bringing the charges, *and* acting as the prosecutor *and* as witness in Plaintiff's case, Dr. Cowell was the person

49.    Plaintiff appeared at the hearing on July 10, 2018, and presented his own defense because the hearing panel, incorrectly, believed that Plaintiff could not be represented by counsel under the University by-laws, which in fact, contain no such blanket prohibition.

50.    Plaintiff made procedural objections to preserve his appellate rights under Temple University Bylaw 8.5.2.  These procedural objections are on the record of the proceedings and enumerated in the attached *Exhibit "C"* to show "substantial noncompliance with the procedures required by these Bylaws or applicable law resulting in demonstrable prejudice."  Undersigned Counsel, as the record will reflect, advised Plaintiff not to continue placing his procedural objections on the record, since it was patently obvious that the hearing committee did not care to consider any allegations of procedural irregularities despite being required to do so since consideration of same constitutes one of *only* two basis for appeals to the Board of Trustees such as occurred in this case — a fact known to the Plaintiff, but evidently not known to the hearing committee chair, nor to the

---

responsible for the appointment of himself and Dr. Tedaldi as investigators in direct violation of Bylaw 7.3.2 requiring that three investigators be appointed to investigate complaints of misconduct.  Presumably the purpose of that particular Bylaw is to reduce the possibility that one or two investigators would have a bias or prejudice against an accused since finding three biased persons to conspire is surely harder than finding one or two.  Plaintiff, despite due diligence, has been unable to ascertain the identity of a third investigator appointed to his case. Temple noticed Drs. Cowell and Tedaldi as potential witnesses, never advised Plaintiff concerning the identity of a third investigator, and no third investigator testified at the hearing.

MSEC prosecutor, Dr. Cowell.

51.    Plaintiff presented extensive testimony at the hearing from approximately ten 10 witnesses under oath who testified to firsthand accounts rebutting every allegation made against Plaintiff as presented by the "prosecutor," MSEC Chair Dr. Cowell.  In contrast, Dr. Cowell on behalf of MSEC *presented no direct testimony* from live witnesses and, instead, relied entirely on hearsay statements not subject to cross examination and without giving Plaintiff the benefit of the questions investigators asked, any recordings or notes that might have been taken by MSEC investigators, nor any understanding of whether MSEC investigators interspersed their own opinions and conclusions of what the witness must have "meant," as opposed to what was the witnesses' said.  In short, Plaintiff was unable to test the veracity of any of the so-called evidence presented by MSEC chair and prosecutor Dr. Cowell, who was tasked with "backing up" the allegations brought by the MSEC board under his leadership.

52.    One of the allegations against Plaintiff brought by MSEC Chair Dr. Cowell was an allegation of improper touching supposedly alleged by a resident named Dr. Dua.  Dr. Dua refused to be interviewed by Temple representatives, refused to sign a purported email or letter giving rise to the charges, and after being personally served with notice and asked to appear by Undersigned Counsel for Plaintiff, *consciously elected not to attend* the July 10, 2018 hearing to explain the substance of her allegations.  In fact, not a single person alleging anything adverse

to Plaintiff testified against him.  NOT ONE.

53.    However, among the direct eyewitness testimony presented by Plaintiff at the hearing were witnesses who were present when Temple claims Plaintiff improperly touched Dr. Dua.  *Every single eyewitness presented agreed that no such improper touching occurred.*  Not a single person testified at the hearing to say they had seen improper touching.

54.    Dr. Weinik believes and avers where the so-called victim refused to cooperate with MSEC investigators because she knew that she was acting as a puppet for Dr. Matin and did not want to testify under oath or give any sort of adopted statement.  She even refused a confirmed actual notice invitation from Plaintiff to testify.  Temple simply ignored the un-rebutted eyewitness testimony presented by Plaintiff that nothing untoward occurred at this event.

55.    At the conclusion of the hearing, after written submissions from both Prosecutor Dr. Cowell, Chair of MSEC, and the person responsible for the appointment of the hearing committee members, and from Dr. Weinik, the hearing committee voted *unanimously* to overrule the MSEC recommendation to terminate Plaintiff.  The hearing committee came to this conclusion after seeing and hearing the testimony, and hearing and reading the parties' arguments, things that MSEC did not do.

56.    Pursuant to Temple University Hospital Bylaws 8.4.7, Plaintiff availed himself of the opportunity to provide "closing written arguments" *attached*

*hereto as Exhibit "D."* These written arguments show that the MSEC decision to overrule the hearing committee "was not supported by substantial evidence based upon the hearing record..." *(See Bylaws 8.5.2).* In fact, it is hard to believe that the voting MSEC members even read the record, or the written arguments, as Plaintiff submits that *any* reasonably fair-minded and just person could not help but conclude that this was a sham prosecution completely lacking in procedural due process that even the MSEC-appointed hearing committee found did not warrant dismissal of Plaintiff.

57.    The written recommendation of the hearing committee, attached hereto as Exhibit "E", was submitted to MSEC. MSEC, without having seen or heard any of the testimony presented at the hearing on July 10, 2018, chose to "reverse the report and recommendation of the hearing committee" pursuant to Bylaws 8.4.9. without even inviting plaintiff to appear and answer questions. *See Exhibit "F."*

58.    MSEC chair Dr. Cowell, stated that he did not participate in the decision to overrule the hearing committee in Plaintiff's case apparently because the thoroughness of *his* conducting of the investigation and *his* prosecution was at issue before MSEC. Yet, Dr. Cowell actually *signed the letter* dated August 27, 2018 stating MSEC's final decision (like a decision from a court made up of multiple members signed by the judge assigned to the case) to overturn the hearing panel. An analogy might be a judge affixing his name alone to an opinion of the

12

full court on the very case on which that judge recused himself.

59.    So, Dr. Cowell appointed himself lead investigator, chaired the MSEC committee that unanimously brought the charges and recommended expulsion, appointed the members of the hearing committee, appointed himself as the prosecutor, acted as Temple's chief witness against Plaintiff, wrote Temple's post-hearing argument (stating, among other nonsensical things, that Plaintiff was required to move into evidence a Bylaw before the hearing panel could consider whether the Bylaw was violated. A Bylaw is simply a rule that the litigants and the hearing panel must abide by.)

60.    Plaintiff suggests that Dr. Cowell's "recusal" rendered him powerless to take *any* action on the matter which caused the recusal. Such actions, like signing the decision letter, should have been done by an independent person, presumably a MSEC vice chair, or such other member of MSEC the members might themselves select to replace Dr. Cowell in this one instance.

61.    Plaintiff submits that Dr. Cowell's signing of the letter dated August 27, 2018 *(i.e.* MSEC's decision overruling the hearing committee) after he claimed to have ceased participating in the deciding of the case, rendered the decision letter, itself, void on its face. As such, MSEC missed the filing deadline for acting on the hearing committee's recommendation by not filing a written determination within the time permitted under the Bylaws attested to by a MSEC official who had not determined he/she could not participate in the decision. Expressed

differently, a prosecutor or judge who has determined he or she cannot be fair and objective, and recuses himself from participating in the decision, *cannot participate at all*, and most certainly cannot be the *only* person to sign a ruling on the very issue on which he/she states that he/she cannot participate pursuant to a perceived (or actual) conflict of interest.

62.    Dr. Cowell relied entirely on hearsay evidence produced from a less-than-thorough investigation completely rebutted by direct, non-hearsay testimony produced by Plaintiff.

63.    As is made clear in the record of the hearing on July 10, 2018, Plaintiff had other witnesses on "stand-by" available to provide additional substantive testimony that the hearing committee deemed not necessary to present as the hearing had already gone on for five (5) hours.  Nevertheless, MSEC opted to "reverse the report and recommendation" of the hearing committee even knowing the hearing committee had "heard enough."  Plaintiff suggests that the record plainly supports the notion the hearing committee was satisfied with the strength of Plaintiff's evidence to the point where it discouraged Plaintiff from presenting additional evidence, and that MSEC blatantly ignored this finding by the hearing committee.

64.    Plaintiff avers that not only was he not afforded the "...procedures required by [the] Bylaws resulting in demonstrable prejudice..." *(Bylaws 8.5.2)*, he also was denied basic procedural due process when the chair of the accusing body,

14

MSEC, selected the hearing panel, acted as the "prosecutor," and, upon failing to obtain the desired result from the hearing panel, that same body, MSEC, under the prosecutor's general leadership, reversed the recommendation of the hearing committee. *No member of MSEC voting on the committee recommendation saw or heard the live testimony to judge for him or herself the credibility of the witnesses testifying on July 10, 2018, before MSEC decided to reverse.* Standing alone, Plaintiff avers these facts demonstrate the inherent unfairness of the procedure afforded him in this case.

65.    Plaintiff believes and therefore avers that the entire procedure used by Temple to conduct its so-called investigation pursuant to bylaw "safeguards" was woefully ill-suited to provide even the most rudimentary due process to Plaintiff. Rather Temple's procedures encourage merely a veneer of due process to disguise a blatantly flawed system designed to create the pre-text of procedural due process, while in reality is laughably inadequate to produce any semblance of the concept.

## COUNT I
## VIOLATION OF DUE PROCESS OF LAW
## (AGAINST TEMPLE DEFENDANTS ONLY)

66.    Plaintiff hereby incorporates all of the foregoing Paragraphs as though fully set forth herein at length.

67.    Plaintiff alleges Defendants violated his right to procedural due process pursuant to 42 U.S.C. § 1983 and applicable to the Commonwealth and its

agents through the 14th Amendment, and will show the following elements in support thereof:

    a. Defendants are "state actors" within in the meaning of 42 U.S.C § 1983;

    b. Defendants engaged in abuse of power, while acting as state actors, intentionally, knowingly, recklessly, and/or with gross negligence beyond ordinary negligence;

    c. Defendants' conduct interfered with Plaintiff's protected liberty interest of property by failing to provide adequate procedural safeguards;

    d. Plaintiff has suffered damages as a direct result of Defendants' failure to provide Plaintiff with meaningful procedural due process of law.

68.    Plaintiff hereby incorporates by reference all paragraphs in this Complaint as though fully set forth at length.

69.    Defendants violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and such provisions of the Pennsylvania Constitution providing similar protections, by condoning a retaliatory attack against Plaintiff by a disgruntled employee, orchestrating a pre-textual investigation and a sham disciplinary proceeding to terminate Dr. Weinik from Temple, further ensuring that he could never practice medicine again anywhere at

the same level.

70.    Dr. Weinik possessed both a property interest and a liberty interest under the U.S. Constitution in his contractual employment with Temple and in his continued ability to practice medicine.

71.    Because Temple University, the Medical School, and the Hospital are affiliated with the Commonwealth of Pennsylvania, the Defendants acted as agents of the state and under the color of law in taking their actions against Dr. Weinik.

72.    As described in exacting detail above, the pre-textual investigation and sham disciplinary proceeding deprived Dr. Weinik of almost all of the traditional procedural due process protections afforded under the U.S. Constitution, including the ability to cross-examine one's accusers under oath, to question available material witnesses under oath, to have meaningful use of counsel, and to present exculpatory evidence before an impartial and unbiased tribunal.

73.    Temple's investigators failed to identify or interview material witnesses, who would have provided exculpatory evidence and testimony disproving the false accusations of Dr. Weinik's accusers.

74.    Temple's investigators ignored and knowingly failed to provide exculpatory evidence to Dr. Weinik.

75.    Temple failed to adhere to its own Bylaws and procedures by, *inter alia*, allowing the unsworn testimony of Dr. Weinik's accusers to be presented to the tribunal in the form of hearsay.

76.    Temple failed to timely inform Dr. Weinik that he had the right to be represented by legal counsel at all stages of the investigation and the proceedings.

77.    Temple failed to timely provide Dr. Weinik with a copy of the Bylaws and procedures that governed the investigation and proceedings.

78.    Indeed, the investigation and subsequent proceeding was so biased and utterly devoid of traditional procedural due process protections as to not qualify as a genuine opportunity for Dr. Weinik to be heard or properly defend himself and his professional reputation from his accusers' false accusations.

79.    As a proximate result of Temple's actions, Dr. Weinik's professional reputation has been ruined and he has lost the ability to practice medicine.

80.    Temple reported and republished the pre-textual reasons for Dr. Weinik's dismissal from his positions to a national practitioner data bank falsely claiming he was fired for bylaw violations, disruptive conduct and sexual misconduct, despite there being no direct evidence produced against Dr. Weinik and his main accuser refusing to sign a statement or appear to give evidence despite confirmed personal service for her to attend Dr. Weinik's hearing.

81.    The inclusion of Dr. Weinik's name on this national data bank has made it impossible for him to secure a position in his field, a field where he is objectively considered at the very top of his profession causing him enormous anxiety and depression that he may never be able to again pursue his life's work based on the unsubstantiated lies of others with a motive to want to hurt Dr.

Weinik's career.

82.    Temple initiated a state licensing board complaint that resulted in an extensive investigation before the board refused to take *any* action against Dr. Weinik.

83.    By initiating such action, Temple effectively reiterated and republished the false statements made by the Defendants.

84.    Plaintiff has incurred extensive legal fees that have left him at a great disadvantage in paying for this litigation.

85.    Plaintiff believes and therefore avers that a goal by Defendants in creating its pre-textual disciplinary process designed to appear as due process when it is anything but, is to bankrupt plaintiffs who go through the process like Dr. Weinik so that they are financially damaged from paying lawyers that they cannot afford protracted litigation going forward.

86.    Plaintiff believes and therefore avers that the Temple procedures he was forced to contend with were enacted by Temple to discourage their use by making them so difficult to navigate that only counsel could advise Plaintiff how to navigate them, costing Plaintiff extensive funds, and during which no actual elements of procedural due process occurred.

87.    Plaintiff believes and therefore avers that no other physician has ever gone through the procedure Defendants required of him.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in his favor and against Defendants, by Ordering Defendants to reinstate Plaintiff to his former positions and provide him with a fair investigation and hearing, which comports with the procedural due process safeguards of the U.S. Constitution.  In addition, Plaintiff requests that the Court Order Defendants to pay compensatory damages of in excessive of $3,000,000 and punitive damages for egregious conduct, and all of Plaintiff's costs and attorneys' fees that he has incurred and will incur,, including treble damages, and Order such other relief as this Court shall deem just and proper, including directing that Plaintiff's name be stricken from the National Practitioner's Databank list of persons dismissed for the type of violations falsely alleged by Defendants against Plaintiff.

## COUNT II
## BREACH OF CONTRACT
## (AGAINST TEMPLE DEFENDANTS ONLY)

88.      In order to prevail in a Breach of Contract Claim, Plaintiff must establish:

a.  The existence of a contract, including its essential terms;

b.  A breach by the Defendant (s) of a duty imposed by the contract; and

c.  Damages were sustained by the Plaintiff on account of the breach of Defendants' duty under the contract.

20

89.    Plaintiff hereby incorporates by reference all paragraphs of this Complaint as though fully set forth at length.

90.    As described above, Dr. Weinik had a 15 month-long Contract with Temple to provide medical services to Temple and "clinical and didactic instruction" to its medical and physician assistant students, its residents, and fellows. *See Ex. "A"*.

91.    In exchange, Dr. Weinik was to receive a minimum annual compensation of $270,999.00, as well as additional incentive compensation and fringe benefits.

92.    Dr. Weinik entered into this Contract with Temple on March 14, 2018.

93.    Temple breached the Contract by improperly and prematurely terminating Dr. Weinik's employment.

94.    In addition, Temple further breached the Contract's implied duty of good faith and fair dealing by failing to properly follow its own Bylaws and policies, which were incorporated into the terms of agreement and also governed Dr. Weinik's rights under the Contract.

95.    Specifically, as described in detail above, Temple used the pre-textual investigation and sham disciplinary proceedings as a means for improperly and prematurely terminating Dr. Weinik's Contract in bad faith.

96.    As a proximate result of Temple's improper and premature

termination of its Contract with him, Dr. Weinik has sustained in excess of $210,000 in lost earnings, earning potential, and benefits. Or at the very least approximately 9 months' compensation under the contract at Exhibit "A."

**WHEREFORE**, Plaintiff requests that this Court enter judgment in his favor and against Defendants, by Ordering Defendants to pay Plaintiff his compensatory and consequential damages, including all costs, and such other relief as this Court shall deem just and proper.

## COUNT III
## LIBEL
## (AGAINST ALL DEFENDANTS)

97.    Plaintiff hereby incorporates all of the foregoing Paragraphs as though fully set forth herein at length.

98.    Libel is proven by the Plaintiff upon a showing that the following can be established:

a)    The publication of;

b)    a statement;

c)    about an individual;

d)    that is defamatory in character; and

e)    the recipient of the publication understands the publication's meaning.

99.    Defendants committed the tort of Libel against Plaintiff.

100.   Plaintiff incorporates all paragraphs in this complaint by reference as if each was enumerated here.

101.   Defendants falsely accused Plaintiff of engaging in sexual harassment.

102.   Defendants made written false statements accusing Plaintiff of criminal sexual harassment to, *inter alia*, employees of Temple, and to the Temple University Hospital Board of Directors.

103.   Defendants' false statements did cause damages to Plaintiff.

104.   Defendants' false statements have *per se* damaged Plaintiff's reputation, are the proximate cause of Plaintiff losing his job and having difficulty finding another job.

105.   Defendants' false statements have *per se* damaged Plaintiff's reputation, are the proximate cause Plaintiff has been shunned in the community in which he formerly freely moved about in educational and professional circles related to medicine.

106.   Defendants' false statements have *per se* damaged Plaintiff's reputation, are the proximate cause of Plaintiff's losing the confidence of those reading the statements as these people are professionals in his field with influence over his career advancement both in the practice of medicine to help people recover from severe illnesses, and the ability to earn money from working in a highly specialized field in which he has spent many years training and developing those special skills.

107.   Defendants' false statements have *per se* damaged Plaintiff's reputation and are the proximate cause of Plaintiff's severe professional and monetary damages.

**WHEREFORE**, Plaintiff demands in excess of $50,000 from each defendant for the tort of libel, and any and all such further relief the Court considers warranted.

**COUNT IV**
**SLANDER**
**(AGAINST ALL DEFENDANTS)**

108.   Plaintiff hereby incorporates all of the foregoing Paragraphs as though fully set forth herein at length.

109.   Slander can be proven by the Plaintiff upon a showing that the following can be established:

a)   The defamatory nature of the alleged communication(s);

b)   the publication of the communication(s) was by the defendant(s);

c)   the application of the communication to the plaintiff;

d)   the recipient's understanding of the communication's meaning;

e)   the recipient's understanding of the communication is intended to be applied to the plaintiff;

f)   special damages resulting to the plaintiff; and

g)   abuse of a conditionally privileged occasion.

110.   Defendants committed the tort of slander against Plaintiff by making false and defamatory verbal statements damaging Plaintiff's reputation.

111.   Plaintiff incorporates all paragraphs in this complaint by reference as if each was enumerated here.

112.   Defendants falsely accused Plaintiff of engaging in sexual harassment.

113.   Defendants made statements to, *inter alia*, personnel of Temple University and the Temple University Hospital Board of Directors all of whom are experienced in the severity of such complaints in the context of the medical profession.

114.   Defendants' statements led to conduct an investigation specifically against Plaintiff demonstrating the recipients to the statements understood precisely what Defendants wanted to communicate in Defendants' effort to ruin Plaintiff's career in retaliation for Plaintiff attempting to remove Dr. Matin from his position as Director of the Resident Program.

115.   Defendants' statements caused damage to Plaintiff's reputation *per se* since the false accusations of sexual harassment is so vile that the law presumes damage especially since some of the false allegations against Plaintiff could be construed by law enforcement as criminal in nature.

116.   Defendants' statements caused special damages to Plaintiff in that the practice of medicine with patients is heavily dependent on the doctor/patient relationship and the trusting bond necessary, that Plaintiff's loss of his positions,

his standing among his peers, his sources of referrals, his professional reputation in his field nationally, to name a few, has brought incalculable harm down upon Plaintiff.

117.   Defendants' have caused special damage further to Plaintiff by forcing him to undergo a humiliating investigation when Plaintiff continued to pursue the removal for Dr. Maitin from his position.

118.   Defendants have done special damage to society since their demonstrably false accusations against Plaintiff not only cast doubt upon the Plaintiff and the medical profession, they cast doubt upon the veracity of woman who truly are victims of sexual assault.

**WHEREFORE**, Plaintiff demands damages in excess of $50,000 from each Defendant for the tort of slander and any and all such further damages as the Court may deem warranted.

**COUNT V**
**INJURIOUS FALSEHOOD**
**(AGAINST ALL DEFENDANTS)**

119.   Plaintiff hereby incorporates all of the foregoing Paragraphs as though fully set forth herein at length.

120.   Injurious is proven by Plaintiff upon a showing that the following can be established:

a)     The statement is false;

b)    the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss;

c)    pecuniary loss does, in fact occur; and

d)    the publisher either knows that the statement is false or acts in reckless disregard its truth or falsity.

121.   Plaintiff is a victim of the tort of Injurious Falsehood caused by Defendants.

122.   Plaintiff incorporates all paragraphs in this complaint by reference as if each was enumerated here.

123.   Defendants made statements that Plaintiff engaged in sexual harassment.

124.   The false accusation was investigated by Temple personnel.

125.   Plaintiff lost his job as a direct result of the false accusations by Defendants.

126.   Plaintiff cannot find further employment because the actions of Defendants caused his name to be placed on a nation registry.

127.   Plaintiff denies the accusation of sexual harassment made in statements by Defendants in the strongest possible terms.

128.   Defendants' actions sought that financial harm would befall Plaintiff by making these false statements either through Plaintiff through Plaintiff losing his career by being fired from his medical positions and unable to find future employment in his medical specialty.

129.    Plaintiff suffered pecuniary loss including, but not limited to the costs to defend himself and the loss of his position with Temple University Hospital and curtailed economic opportunities at other medical venues as word of the false allegations spread.

130.    Defendants Shivani Dua and Phillip Acevedo told their employer, Defendant Temple, Plaintiff engaged in sexual harassment knowing that was false or in reckless disregard for the truth or falsity of said statement.

**WHEREFORE**, Plaintiff demands damages in excess of $50,000 from each Defendant for the tort of Injurious Falsehood, and any and all such further relief the Court deems warranted.

*A TRIAL BY JURY IS DEMANDED.*

Date: November 19, 2019                    Respectfully Submitted,


                                    _____/s/ *Bruce L. Castor, Jr.*_____
                                    Bruce L. Castor, Jr. (ID. No. 46370)
                                    ROGERS CASTOR
                                    26 East Athens Ave.
                                    Ardmore, PA 19003
                                    610.649.1800
                                    877.649.1880 (Fax)
                                    Bruce@RogersCastor.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL WEINIK, D.O.

                     *Plaintiff*

    v.

                      No. 2:19-cv-3503-MSG

TEMPLE UNIVERSITY OF THE
COMMONWEALTH SYSTEM OF
HIGHER EDUCATION, TEMPLE
UNIVERSITY LEWIS KATZ
SCHOOL OF MEDICINE, TEMPLE
UNIVERSITY HOSPITAL, SHIVANI
DUA, and PHILLIP ACEVEDO

                     *Jury Trial Demanded*

                     *Defendants*

## CERTIFICATE OF SERVICE

I certify that on November 19, 2019, I caused the foregoing Amended Complaint to be served upon the following counsel of record *via* First Class U.S. Mail in the above-captioned matter:

Leslie Miller Greenspan, Esq.
Joe H. Tucker , Jr., Esq.
The Tucker Law Group
One Penn Center at Suburban Station
1617 JFK Boulevard, Suite 1700
Philadelphia, PA 19103

Danielle Banks, Esq.
Adam D. Brown, Esq.
Stradley Ronon Stevens & Young LLP
2005 Market St., Suite 2600
Philadelphia, PA 19103-7098

        /s/ *Bruce L. Castor, Jr.*
Bruce L. Castor, Jr. (ID. No. 46370)
ROGERS CASTOR
26 East Athens Ave.
Ardmore, PA 19003
610.649.1800
Bruce@RogersCastor.com