IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL WEINIK, D.O.,** | : |
| | : |
| *Plaintiff,* | : CIVIL ACTION |
| | : |
| v. | : No. 19-3503 |
| **TEMPLE UNIVERSITY OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, et al.,** | : |
| | : |
| *Defendants.* | : |

Goldberg, J.                                                                                                          July 10, 2020

## MEMORANDUM

Plaintiff Michael Weinik, D.O. has sued Defendants Temple University of the Commonwealth System of Higher Education, Temple University of the Commonwealth System of Higher Education, Temple University's Lewis Katz School of Medicine, Temple University Hospital (collectively, "Temple" or the "Temple Defendants"), Defendant Dr. Phillip Acevedo, and Defendant Dr. Shivani Dua. The Amended Complaint alleges a violation of due process, libel, slander, injurious falsehood, and breach of contract. The Temple Defendants (including Dr. Acevedo) and Defendant Dua have each filed Motions to Dismiss the Amended Complaint. For the following reasons, these Motions will be denied.

### I.   FACTS IN THE AMENDED COMPLAINT

The Amended Complaint sets forth the following facts: [1]

---

[1] In deciding a motion under Federal Rule of Civil Procedure, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

Plaintiff practiced medicine at Temple as a first-year Physical Medicine Rehabilitation resident over thirty years ago.  In October 1989, Plaintiff began working as an attending physician at Temple and, from 1991 to 2001, served as an Assistant Professor in Temple's Physical Medicine & Rehabilitation Department.  He became an Associate Professor of Physical Medicine in 2001 and a full clinical Professor in 2013, where he served until his termination in 2018.  Plaintiff's ongoing employment with Temple was renewed on an annual basis by a letter agreement, reappointing him as Professor of Clinical Physical Medicine and Rehabilitation.  (Id. ¶¶ 11–16, 26.)

In 2015, the Dean of the School of Medicine appointed Plaintiff as Interim Chair of the Department of Physical Medicine and Rehabilitation because, according to the Dean, the current chair—Dr. Ian Matin—was allowing the program to "falter with standards of education and care."  From November of 2017 to January of 2018, Plaintiff was actively engaged in the process of the removing Dr. Matin from his additional position as the residency program director.  According to the Amended Complaint, this action would have purportedly "dealt a severe blow" to Dr. Matin's career.  (Id. ¶¶ 29–31.)

Plaintiff alleges that Dr. Matin, acting out of spite or other malicious motives, "set in motion a series of events weaponizing residents he befriended, or had power over in his position as Director, to falsely accuse [Plaintiff] of sexual harassment" knowing that this was the only way Dr. Matin could retain his position.  In the middle of January 2018, several residents purportedly began making false allegations against Plaintiff to preempt him from removing Dr. Matin from his position as Director.  On March 11, 2018, a past resident at Temple told Plaintiff that Dr. Matin was attempting to ruin Plaintiff's career by enticing residents to make bogus complaints of sexual harassment.  (Id. ¶¶ 32–34, 36.)

On March 13, 2018, supervisors at Temple removed Plaintiff as interim Chair of the Department. The following day, Plaintiff and Temple executed a fifteen-month contract to employ Plaintiff until July 2019, without the additional compensation previously paid to him as interim Chair. On March 15, 2018, Temple orally advised Plaintiff that he was on administrative leave, effectively immediately. Plaintiff was given one hour to clean out his office and was not given written notice of his alleged transgressions. (Id. ¶¶ 36–38, 40.)

Plaintiff claims that Temple officials thereafter conducted an "inept, unprofessional, and incomplete 'investigation'" into these sexual harassment allegations. Following a unanimous recommendation for Plaintiff's expulsion by Temple's Medical Staff Executive Committee ("MSEC"), a hearing was conducted, on July 18, 2018, pursuant to Temple University Hospital Bylaws 8.3 and 8.4. The hearing committee, comprised of three Medical Staff members, was chosen by the Chair of the MSEC, Vincent Cowell, M.D. Dr. Cowell also acted as the "prosecutor" at the hearing, calling witnesses, giving testimony, and making arguments in an effort to demonstrate to the hearing committee that it ought to agree with the recommendation of MSEC that Plaintiff be expelled. (Id. ¶¶ 35, 42–44.)

Plaintiff appeared at the hearing and presented his own defense based on the hearing panel's belief that Plaintiff could not be represented by counsel under University by-laws. Plaintiff made procedural objections to preserve his appellate rights regarding the hearing's "substantial noncompliance" with the bylaws' procedures. Plaintiff also presented extensive testimony from approximately ten witnesses, who testified to firsthand accounts rebutting every allegation made against him. In contrast, Dr. Cowell presented no direct testimony from live witnesses and, instead, relied entirely on hearsay statements not subject to cross examination. (Id. ¶¶ 45–47.)

One of the allegations against Plaintiff was a claim by Defendant Dr. Shivani Dua, a resident, who asserted that Plaintiff had improperly touched her. Dr. Dua refused to be interviewed by Temple representatives, refused to sign an email or letter giving rise to the charges, and consciously elected not to attend the July 10, 2018 hearing to explain the substance of her allegations. According to Plaintiff, not a single person testified at the hearing that they had witnessed Plaintiff improperly touch Dr. Dua and, in fact, every single witness agreed that no improper touching occurred. (Id. ¶¶ 48–49.)

At the conclusion of the hearing, after written submissions from both Dr. Cowell and Plaintiff, the hearing committee voted unanimously to overrule the MSEC recommendation to terminate Plaintiff. The written recommendation of the hearing committee was submitted to the MSEC. Despite this recommendation, the MSEC chose to "reverse the report and recommendation of the hearing committee," pursuant to Bylaw 8.4.9, and did so without inviting Plaintiff to appear and answer questions. Although MSEC Chair, Dr. Cowell, claimed that he did not participate in the decision to overrule the hearing committee, his signature appeared on the August 27, 2018 letter setting forth the MSEC's final decision. (Id. ¶¶ 51, 53, 54.)

Plaintiff alleges that "the entire procedure used by Temple to conduct its so-called investigation pursuant to bylaw 'safeguards' was woefully ill-suited to provide even the most rudimentary due process to Plaintiff. Rather Temple's procedures encourage[d] merely a veneer of due process to disguise a blatantly flawed system designed to create the pre-text of procedural due process, while in reality [was] laughably inadequate to produce any semblance of the concept." (Id. ¶ 61.)

In June 2019, Plaintiff filed a Complaint against Defendants in the Philadelphia County Court of Common Pleas. Defendants removed the case to federal court and, on November 19,

2019, Plaintiff filed the Amended Complaint setting forth five causes of action: (1) a claim against the Temple Defendants pursuant to 42 U.S.C. § 1983 for a violation of his procedural due process rights; (2) breach of contract against the Temple Defendants ; (3) libel against all Defendants; (4) slander against all Defendants; and (5) injurious falsehood against all Defendants.

Defendant Dua and the Temple Defendants, acting on behalf of Dr. Acevedo, each filed a Motion to Dismiss on January 15, 2020.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and only a complaint that states a plausible claim for relief survives a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id. at 679.

The Court of Appeals has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the

assumption of truth." Id.  Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679).  The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Iqbal, 556 U.S. at 679).

## III. DISCUSSION

Defendants seek dismissal of Plaintiff's libel, slander, and injurious falsehood claims on two grounds.  First, they contend that these claims are time-barred because all the allegedly defamatory statements were made more than one year prior to the filing of the Complaint.  Second, Defendants posit that the statements are absolutely privileged under Pennsylvania's judicial proceeding privilege.

### A. Whether the Claims Are Time Barred

Pennsylvania law provides a one-year statute of limitations for "an action for libel, slander or invasion of privacy."  42 Pa. Cons. Stat. § 5523(1).  The time within which a matter must be commenced is calculated from the time the cause of action accrued.  Id. § 5502.  Usually, a claim accrues at "the occurrence of the final significant event necessary to make the claim suable."  Barnes v. American Tobacco Co., 161 F.3d 127, 152 (3d Cir. 1998) (citing Mack Trucks, Inc. v. Bendix–Westinghouse Auto. Air Brake Co., 372 F.2d 18, 20 (3d Cir. 1966)).  "[I]t is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to initiate suit within the prescribed period."  Crouse v. Cyclops Indus., 745 A.2d 606, 611 (Pa. 2000) (citing Hayward v. Med. Ctr. of Beaver Cty., 608 A.2d 1040, 1042 (1992)); see also Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983).

Generally, under Pennsylvania law, in cases of "media-public defamation"—*i.e.*, where the publication is widely disseminated—the cause of action accrues on the date of publication of the defamatory statements, regardless of when the plaintiff became aware of the statements. Barrett v. Catacombs Press, 64 F. Supp. 2d 440, 446–47 (E.D. Pa. 1999). Where, however, the communications are secret and a plaintiff could not be expected to know of the defamatory statements, the discovery rule may apply. Id.; see also Smith v. IMG Worldwide, Inc., 437 F. Supp. 2d 297, 306 (E.D. Pa. 2006). The "discovery rule" will toll the running of the limitations period until "the plaintiff knows or reasonably should know (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." Romah v. Hygienic Sanitation Co., 705 A.2d 841, 857 (Pa. Super. Ct. 1997) (quotations omitted). Generally, "once a plaintiff possesses the salient facts concerning the occurrence of his injury and who or what caused it, he has the ability to investigate and pursue his claim." Id. (emphasis omitted) (quoting Baily v. Lewis, 763 F. Supp. 802 (E.D. Pa. 1991), aff'd 950 F.2d 721 (3d Cir. 1991)) (further quotations omitted). [2]

---

[2] The cases cited by Defendants for the proposition that the discovery rule does not apply to defamation claims are distinguishable. In Brown v. Davita, 09-2892, 2011 WL 5523823 (E.D. Pa. Nov. 14, 2011), the plaintiff admitted that she knew of the statements and who spoke them by a certain time, but claimed that she was unaware that she had a cause of action against the speaker until after she retained an attorney. The court declined to find that the discovery rule applied. Similarly, in Gallucci v. Phillips, 614 A.2d 284 (Pa. Super. Ct. 1992), the plaintiff admitted knowing of the injury and its cause, but simply did know the "specific content of the defamatory statements." Id. at 288.

By contrast, multiple courts have applied the discovery rule to defamation claims where facts indicated that the plaintiff may not have known of the precise defamatory statements. See, e.g., Smith, 437 F. Supp. 2d at 306 (holding discovery rule applied where statements were made outside plaintiff's presence, and plaintiff had "little or no reason to suspect" they had been made); Barron v. St. Joseph's Univ., No. 01-2063, 2002 WL 32345690, at *8 (E.D. Pa. Jan. 17, 2002) (finding that complaint did not contain sufficient facts for the court to determine when plaintiff should have become aware of defamation; statements were made prior to plaintiff's termination and plaintiff only learned about them after her employment ended); Giusto v. Ashland Chem. Co., 994 F. Supp. 587, 594 (E.D. Pa. 1998) (applying discovery rule to statements made by former co-

"While a court may entertain a motion to dismiss on statute of limitations grounds, it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." Schmidt v. Skolas, 770 F.3d 241, 251 (3d Cir. 2014) (internal citations omitted). The Third Circuit has stated, in the context of the discovery rule, that when "the pleading does not reveal when the limitations period began to run . . . the statute of limitations cannot justify Rule 12 dismissal." Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 835 (3d Cir. 2011). Thus, the commencement of the limitations period may be determined as a matter of law only "where the facts are so clear that reasonable minds cannot differ." Crouse, 745 A.2d at 611 (citing Hayward v. Med. Ctr. of Beaver Cty., 608 A.2d 1040 (Pa. 1992)).

Here, reasonable minds could differ regarding the accrual of the statute of limitations. Defendants argue that Plaintiff's defamation, libel, and injurious falsehood claims are barred because the case was filed on June 28, 2019, but, according to the Amended Complaint, all the purportedly defamatory statements by Dr. Acevedo, Dr. Dua, and Temple Defendants were made from January through March 2018. Plaintiff urges that the discovery rule operates to toll the statute of limitations because he was unaware of either the content of the statements or the speakers' identities until the hearing in July 2018, thus rendering his June 28, 2019 Complaint timely.

The face of the Amended Complaint does not allow a determination of when the statute of limitations commenced. The Amended Complaint sets forth the following relevant allegations:

> 33.    Plaintiff believes and therefore avers that residents inspired by Dr. Matin began making false allegations against Plaintiff in the middle of January 2018, in order to pre-empt Plaintiff from removing Dr. Matin from his position as Director.

---

worker when record unclear "when plaintiff became aware, or should have become aware" that former co-worker had uttered them).

> . . .
>
> 36    On March 11, 2018, a past resident at Temple, and a current practicing physician, told Plaintiff that Dr. Ian Matin was attempting to ruin Plaintiff's career by enticing residents [to] make bogus complaints of sexual harassment and other misconduct about Dr. Weinik to Temple officials.
>
> 37.   Despite Dr. Weinik's diligent efforts to investigate on his own the details of the false allegations and his attempts to learn the identifies of the specific individuals spreading the lies, Dr. Weinik's efforts proved unsuccessful.
>
> 38.   On March 13, 2018, supervisors at Temple removed Plaintiff as interim Chair of the Department, leaving Plaintiff to believe this was to be his "punishment" on the unfounded allegations.
>
> . . .
>
> 41.   On March 15, 2018, Temple, orally advised Plaintiff he was on Administrative leave effective immediately and that he had one hour to clean out his office.  Plaintiff was not given written notice of his alleged transgressions, nor notice of any right to counsel.
>
> . . .
>
> 43    On July 10, 2018, a hearing was conducted pursuant to the Temple University Hospital Bylaws 8.3 and 8.4 before a hearing committee appointed following a unanimous adverse recommendation by MSEC under Bylaw 8.2 recommending expulsion of Plaintiff.
>
> 44.   Temple did not reveal the identities of many of his accusers or any of the details of their allegations against him until just days before the hearing.
>
> 45.   Indeed, the full scope of the lies asserted against Dr. Weinik was not revealed until July 10, 2018.

(Am. Compl. ¶¶ 33, 36–38, 41, 43–45.)

Taking these allegations as true—as I must on review of a Rule 12(b)(6) motion—I cannot find, at this stage of the case, that Plaintiff possessed the salient facts concerning the occurrence of his injury and who or what caused it, giving him the ability to investigate and pursue his claim.  While an argument can be made that Plaintiff knew, as early as March 2018, that something derogatory was being said about him to his employers at Temple, the Amended Complaint does

not allow the inference posited by Defendants—that Plaintiff knew at that time either (a) that the statements were false claims of sexual harassment or (b) who was making those statements.[3] As I cannot clearly determine when Plaintiff had sufficient knowledge regarding the alleged defamatory statements in order to bring plausible claims for defamation, libel, and injurious falsehood, I will deny this portion of Defendants' Motions to Dismiss.

### B.     Whether the Claims Are Barred by Judicial Privilege

Defendants next contend that Plaintiff's claims for defamation, libel, and injurious falsehood are barred by Pennsylvania's judicial proceeding privilege.

"It has long been the law of Pennsylvania that statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation." Pawlowski v. Smorto, 588 A.2d 36, 41 (Pa. Super. Ct. 1991); see also Binder v. Triangle Publ'ns, Inc., 275 A.2d 53, 56 (Pa. 1971) ("All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse."). Pennsylvania affords this privilege so that "[a]ll persons involved in a judicial proceeding are encouraged . . . to speak frankly and argue freely without danger or concern that they may be

---

[3]     Indeed, had Plaintiff attempted to file an earlier, more barebones defamation complaint without some basic information regarding the content of the purportedly defamatory statements— as Defendants contend he should have—such a complaint could have faced dismissal under a Rule 12(b)(6) standard.  See Carter v. Susquehanna Reg'l Police Dept., No. 0-4764, 2009 WL 1183415, at *8 (E.D. Pa. Apr. 30, 2009) (finding that a complaint which alleged that plaintiff's former employer defamed her to prospective employers "[fell] short of even the liberal federal pleading standards," because the plaintiff did not set forth the substance of the defamatory statements, or identify the putative recipients, and "no defendant could defend against such allegations in any meaningful way"); Yellovich v. Ahold USA, No. 14-4665, 2014 WL 6676494, at *5 (E.D. Pa. Nov. 24, 2014) ("claiming, on information and belief," that defendant defamed plaintiff without identifying what was said and by whom to whom does not provide "adequate suggestion of impropriety;" "[a]lthough Pennsylvania courts have not spoken on this exact point, other jurisdictions agree that a defamation claim requires at least slightly more detail").

required to defend their statements in a later defamation action." Smith v. Griffiths, 476 A.2d 22, 24 (Pa. Super. Ct. 1984); accord Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 311 (3d Cir. 2003).

The judicial privilege has been extended to proceedings that are "quasi-judicial" in nature, which "has been defined to include any hearing before a tribunal which performs a judicial function, including many administrative officers, boards and commissions, so far as they have the powers of discretion in applying the law to the facts which are regarded as judicial or 'quasi-judicial' in character." Milliner v. Enck, 709 A.2d 417, 419 n.1 (Pa. Super. Ct. 1998). "[U]nder Pennsylvania law[,] government involvement is also a necessary condition for according quasi-judicial status to grievance procedures." Overall v. University of Pa., 412 F.3d 492, 497 (3d Cir. 2005); see also Harris v. Saint Joseph's Univ., No. 13-3937, 2014 WL 1910242, at *9 (E.D. Pa. May 13, 2014). In other words, the quasi-judicial privilege must involve "proceedings before federal, state, or local governmental bodies, or proceedings held pursuant to a statute or administrative regulation."[4] Overall, 412 F.3d at 497.

In order to establish that the quasi-judicial privilege applies, the party asserting it must establish two elements: (1) the allegedly defamatory statements were issued during the regular course of judicial proceedings and (2) the statements were "pertinent and material" to those proceedings. Bochetto v. Gibson, 860 A.2d 67, 73 (Pa. 2004).

1. Whether the Proceedings Were Quasi-Judicial in Nature

The parties first dispute whether the proceedings were quasi-judicial in nature. Defendants contend that the Amended Complaint repeatedly couches the hearing as a quasi-judicial

---

[4] Here, neither party disputes that Temple University is a governmental entity for purposes of this case. The Amended Complaint specifically pleads that Temple University and its affiliated entities are "state-related institutions." (Am. Compl. ¶¶ 2–5.)

11

proceeding, referencing the use of a "prosecutor," the lodging of "procedural objections" to "preserve[] appellate rights," the presentation of "extensive testimony," and the opportunity to provide "closing written arguments." Plaintiff responds that "there is a basic factual issue as to whether Temple's sham proceeding could plausibly even qualify as 'quasi-judicial' proceeding."

The Pennsylvania Superior Court has explained that, "[i]n order to determine whether an individual is entitled to quasi-judicial immunity, we first examine the nature of the actions complained of to ascertain whether they were performed within the quasi-judicial adjudicatory function." Greenberg v. McGraw, 161 A.3d 976, 985 (Pa. Super. 2017) (quoting Pollina v. Disshong, 98 A.3d 613, 621 (Pa. Super. 2014)). "The test to determine if a function is 'quasi-judicial' is whether it involves the exercise of discretion and requires notice and a hearing." Urbano v. Meneses, 431 A.2d 308, 311 (Pa. Super. Ct. 1981) (citations omitted). More specifically, the court must "look to the presence and exercise of discretionary decision-making authority (*i.e.*, applying the law, rules and regulations to the factual matrix of a given case) as well as the existence of procedural safeguards in the administrative proceeding similar to the safeguards afforded at a judicial proceeding (*e.g.*, notice, hearing, right to cross-examine witnesses, etc.)." Pollina, 98 A.3d at 620–21 (Pa. Super. 2014) (citation omitted). The Superior Court has noted that "the majority of jurisdictions apply absolute privilege to defamatory statements which are made in relation to a 'quasi-judicial proceeding.'" Milliner, 709 A.2d at 419 n.1 (citations omitted).

The Pennsylvania Superior Court more clearly defined what constituted a quasi-judicial proceeding in Greenberg v. McGraw, supra. There, a doctor brought an action against a former physician's assistant alleging that, after the physician's assistant was terminated, she brought a series of false defamatory reports against the doctor to the Commonwealth of Pennsylvania State

Board of Medicine. Id. at 979. The Board of Medicine began investigating the doctor's fitness to practice medicine. Id. The doctor then brought a tort action against the physician's assistant claiming defamation. After the physician's assistant asserted that she was immune under a quasi-judicial privilege, the trial court dismissed the defamation claims on that ground. Id. at 980.

Reviewing the allegations in the complaint, the Superior Court found that the Board's investigation and action constituted a "quasi-judicial" proceeding. Id. at 986–87. The regulations which applied to the proceeding stated that complaints are assigned to "prosecution and investigatory staff" who, along with medical consultants, make a determination regarding whether a complaint merits consideration. Id. at 986 (citing 49 Pa. Code § 16.55(b)). According to those regulations, the Board prosecutor then initiates a reasonable inquiry or investigation to determine the complaint's truth and validity and determines whether to settle the matter or file formal charges. Id. If a formal complaint is filed, hearing examiners are appointed to hear matters, which are open to the public. Id. at 987. Thereafter, upon application for review, the Board may take additional testimony and arguments of counsel to reach a Board decision. Id. Ultimately, "[t]he Board will issue its final decision, along with its findings of fact and conclusions of law, which will be sent by mail to the parties involved." Id. (quoting 49 Pa. Code § 16.57(a)(4)). Based on the foregoing, the Pennsylvania Superior Court found that these procedures constitute a quasi-judicial proceeding as they shared many characteristics of the adjudicatory process including discretionary decision-making and procedural safeguards. Id.

Here, taking the allegations in the Amended Complaint as true, the hearing at issue conducted pursuant to the Temple University Hospital Bylaws, like that in Greenberg, also shared many characteristics of the adjudicatory process. There were three hearing committee panelists chosen from the Medical Staff, as well as a "prosecutor." (Am. Compl. ¶¶ 47–48.) At the hearing,

both Plaintiff and the appointed "prosecutor" were able to call witnesses and make arguments. (Id. ¶¶ 51–53.) Plaintiff had the opportunity to lodge "procedural objections to preserve his appellate rights" and could appeal the hearing decision to the Board of Trustees. (Id. ¶ 50.) Likewise, both sides were given the opportunity to provide "closing written arguments," after which the hearing committee rendered a decision. (Id. ¶¶ 55–56.) Given these allegations, I find that the hearing at issue was quasi-judicial in nature.

Plaintiff presses that this "sham proceeding" was not quasi-judicial because "it lack[ed] any of the procedural due process safeguards afforded under the U.S. Constitution and the allegations against [Plaintiff] were not asserted in good faith." (Defs.' Opp'n 11.) He contends that "there is a basic factual issue" as to whether this proceeding could plausibly even qualify as quasi-judicial because of all of the procedural defects, including admission of hearsay evidence, Temple's withholding of the identity of the accusers until the eve of the hearing, denial of Plaintiff's right to a lawyer, denial of the opportunity to present all available witnesses, and the "prosecutor's" involvement in the hearing panel's decision. (Id. at 11–12.) Plaintiff asserts that the proceeding cannot be deemed quasi-judicial because "Temple's charade of a procedure doomed it to failing the minimum standards of decency and reliability that constitutional due process is designed to protect from." (Id. at 13.)

Plaintiff's argument conflates the question of whether Temple's proceedings were quasi-judicial in nature with the question of whether he received the requisite due process in those proceedings. While the due process question is factual in nature and constitutes one of Plaintiff's substantive claims against the Temple Defendants, it has no bearing on whether the proceeding itself was quasi-judicial for purposes of the quasi-judicial privilege.[5] Rather, as described in

---

[5] The case cited by Plaintiff, Doe v. Baum, 903 F.3d 575 (6th Cir. 2018), only serves to highlight that distinction. That case involved a claim of denial of due process in the context of a university

Plaintiff's Amended Complaint, the hearing was indeed quasi-judicial regardless of whether Temple properly provided all requisite procedural safeguards.

### 2. Whether the Alleged Defamatory Statements Made Were Pertinent and Material to the Proceedings

The inquiry does not end there. "[I]n order to determine whether an individual is entitled to quasi-judicial immunity, [the court] must [also] examine the nature of the actions complained of to ascertain whether they were performed within the quasi-judicial adjudicatory function." Pollina, 98 A.3d at 621. Judicial privilege is applicable to "communications made prior to the institution of proceedings if such communications were 'pertinent and material' and ha[d] been issued in the regular course of preparing for contemplated proceedings." Greenberg, 161 A.3d at 982 (quoting Post v. Mendel, 507 A.2d 351, 356 (Pa. 1986)); see also Milliner, 709 A.2d at 420 ("It is clear that an allegedly defamatory communication is absolutely privileged when it is published prior to a 'judicial proceeding' as long as that communication has a bearing on the subject matter of the litigation."). In fact, the privilege has been extended to statements made by private parties to officials for the purpose of initiating charges or proceedings, even if those statements were allegedly false. Greenberg, 161 A.3d at 987–89 (finding that judicial privilege applied where the complaint alleged that the defendant made an allegedly retaliatory and defamatory false report to the Board of Medicine for the purpose of instigating legal process against Plaintiff's license).

---

disciplinary proceeding. Id. at 581. The Sixth Circuit recognized that "(1) if a student is accused of misconduct, the university must hold some sort of hearing before imposing a sanction as serious as expulsion or suspension, and (2) when the university's determination turns on the credibility of the accuser, the accused, or witnesses, that hearing must include an opportunity for cross-examination." Id. The Court did not address the concept of quasi-judicial immunity or hold that a hearing that lacks procedural due process protections fails to qualify as a judicial proceeding.

The Pennsylvania Supreme Court more clearly refined this principle in Schanne v. Addis, 121 A.3d 942 (Pa. 2015).  That case was initially brought in federal court and alleged that a former student told her friend she had been involved with her high school teacher years earlier.  When the friend reported this information, the high school held a pre-termination hearing and fired the teacher.  Id. at 943–44.  The teacher sued for defamation, and the District Court granted summary judgment to the former student on the basis of quasi-judicial privilege because the former student's statement to her friend "served as the catalyst" for the hearing.  Immunity was applied even though the former student did not intend to initiate a proceeding when she talked to her friend.  Id. at 945 (quoting Schanne v. Addis, 898 F. Supp. 2d 751, 757 (E.D. Pa. 2012), vacated and remanded 615 F. App'x 759 (3d Cir. 2015)).

On appeal, the Third Circuit certified the following question to the Pennsylvania Supreme court:  "Does the absolute judicial privilege apply to an allegation of sexual misconduct against a teacher by a former student, which allegation was made prior to the commencement of any quasi-judicial proceeding and without an intent that the allegation lead to a quasi-judicial proceeding?"  Id.  In answering this question, the Pennsylvania Supreme Court held that the privilege "does not apply to an allegation made by an adult before commencement of any quasi-judicial proceeding and without an intent that it lead to a quasi-judicial proceeding."  Id. at 952.  The court explained that the privilege "incentiviz[es] individuals to speak freely . . . in *seeking to initiate* judicial or quasi-judicial proceedings," but it does not serve this policy when the individual does not intend to initiate a proceeding or seek a remedy.  Id. at 949 (emphasis in original).  The Pennsylvania Supreme Court further emphasized that this standard required an inquiry *into the factual issue of the speaker's intent.*  Id. at 951.  After this ruling, the Third Circuit reversed the grant of summary

judgment, finding evidence that the speaker did not intend to initiate any proceedings or seek a remedy.

Here, two sets of statements are subject to Plaintiff's defamation claims: (1) Dr. Dua's statements regarding Plaintiff's alleged sexual harassment of her, and (2) Dr. Acevedo's reports of sexual harassment by Plaintiff. According to the Amended Complaint, Plaintiff learned, at the hearing on July 10, 2018, that "Defendants Shivani Dua and Phillip Acevedo falsely and maliciously told their employer, Defendant Temple, Plaintiff engaged in sexual harassment knowing that was false or in reckless disregard for the truth or falsity of said statement." (Am. Compl. ¶ 46.) The Amended Complaint then attaches the entire transcript of the July 10th hearing, which reflects the precise substance of the statements at issue. Although the Amended Complaint alleges that these statements "led to conduct [sic] an investigation specifically against Plaintiff," nothing in the Amended Complaint allows an inference that either Dr. Dua or Dr. Acevedo spoke with the intent of causing the initiation of quasi-judicial proceedings. Indeed, the Amended Complaint suggests that these statements were made by Defendants at the behest of former Director of the Residency Program, Dr. Ian Matin, in an effort to preempt Plaintiff from removing Dr. Matin from his position as Director. (Id. ¶¶ 32–33.) Moreover, according to the Amended Complaint, "Dr. Dua refused to be interviewed by Temple representatives, refused to sign a purported email or letter giving rise to the charges, and . . . consciously elected not to attend the July 10, 2018 hearing." (Id. ¶ 52 (emphasis omitted).) While the evidence in this case may ultimately reveal that both Dr. Dua and Dr. Acevedo intended that their statements lead to the termination hearing, such a finding regarding intent is not appropriate at this stage of litigation.[6]

---

[6] Defendant Dua's reliance on Fogel v. University of the Arts, No. 18-5137, 2019 WL 1384577 (E.D. Pa. Mar. 27, 2019) is unpersuasive. In that case, both a student and a professor brought sexual harassment complaints against the plaintiff, a photography professor at the University of the Arts. Id. at *2. The University investigated the allegations and terminated the

## IV.   CONCLUSION

In light of the foregoing, I find that neither the statute limitations issue nor the quasi-judicial privilege issue is appropriate for resolution at the Rule 12(b)(6) stage.  Accordingly, I will deny both Motions to Dismiss.  An appropriate Order follows.

---

plaintiff, following which the plaintiff sued the University and two individuals for, among other things, defamation and false light invasion of privacy.  Id. at *2–4.  One of the complainants, Professor Little, moved to dismiss the defamation claim on the basis of quasi-judicial immunity.  Id. at *8.  The court found that her complaints to the University were protected by the quasi-judicial privilege because the complaint allegation that the complaining professor "initiated the process by which [the plaintiff] was terminated."  Id. at *10.  The court went on to hold that Professor Little's statements about the plaintiff's behavior to third parties at an academic conference were not privileged since there was no allegation that the statements were made to initiate an investigation.  Id. at *11.

Unlike Fogel, nothing in the Amended Complaint either asserts or allows the reasonable inference that Dr. Dua and/or Dr. Acevedo made the allegedly defamatory statements with the intent to initiate a quasi-judicial proceeding.